# EXHIBIT A

 CT Corporation

**Service of Process Transmittal**
02/26/2014
CT Log Number 524473133

TO: Ingrid McPeak
Booz Allen Hamilton Inc.
8283 Greensboro Drive
McLean, VA 22102

RE: **Process Served in District of Columbia**

FOR: Booz Allen Hamilton Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Gia Allen, Pltf. vs. Booz Allen Hamilton, Dft. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summons, Attachment, Initial Order, Addendum, Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Superior Court of the District of Columbia, DC Case # 2014CA001056B |
| **NATURE OF ACTION:** | Employee Litigation - Breach of Contract - Failure to Page Wages According to Promissory Estoppel |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Washington, DC |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 02/26/2014 at 13:05 |
| **JURISDICTION SERVED :** | District of Columbia |
| **APPEARANCE OR ANSWER DUE:** | Earliest Answer Date - Within 20 days after service (Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | F. Peter Silva II The Gowen Group Law Office, PLLC 1325 G Street N.W. Suite 500 Washington, DC 20005 202-380-9355 |
| **REMARKS:** | Even though the documents are addressed to Booz Allen Hamilton, the process server indicated that the process should be taken on behalf of Booz Allen Hamilton, Inc. |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day , 798049386220 Image SOP Email Notification, Douglas Manya Manya_douglas@BAH.com Email Notification, William Meyers meyers_william@bah.com Email Notification, Ingrid McPeak mcpeak_ingrid@bah.com |
| **SIGNED:** | C T Corporation System |
| **PER:** | Mark Diffenbaugh |
| **ADDRESS:** | 1015 15th Street, N.W. Suite 1000 Washington, DC 20005 |
| **TELEPHONE:** | 202-572-3133 |

Page 1 of  1 / MJD

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.





**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

GIA ALLEN

_____
                                            Plaintiff

                    vs.                                     Case Number **14 - 0 0 0 1 0 5 6**

BOOZ ALLEN HAMILTON
_____
                                            Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

| | |
|---|---|
| F. PETER SILVA II | _Clerk of the Court_ |
| Name of Plaintiff's Attorney | |
| 1325 G ST NW STE 500 | By _____ |
| Address | Deputy Clerk |
| WASHINGTON, D.C. 20005 | |
| 202-380-9355 | Date  2 2 14 |
| Telephone | |

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시오      ያማርኛ ተርጓሚ ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

| | | |
|---|---|---|
| GIA ALLEN | : | |
| 2619 Douglass Rd SE<br>Unit 201<br>Washington, D.C. 20020 | :<br><br>: | |
| Plaintiff | : | |
| | : | |
| v. | : | Civil Action No. 14 - 0 0 0 1 0 5 6<br>Calendar No. : |
| BOOZ ALLEN HAMILTON | : | Judge: |
| 901 15th Street NW<br>Suite 400<br>Washington, DC 20005 | :<br><br>: | |
|     C T Corporation System<br>    1015 15th Street, N.W. Ste 1000<br>    Washington, DC 20005 | :<br><br>: | |
| Defendant | : | |

RECEIVED
Civil Clerk's Office
FEB 21 2014
Supe... ...urt of the
District of Columbia
Washington, D.C.

## COMPLAINT

## FOR BREACH OF CONTRACT AND FAILURE TO PAY WAGES

### INTRODUCTION

1.    Plaintiff, Gia Allen, brings this wage collection, breach of contract, negligent

misrepresentation and promissory estoppel action against her former employer, Booz

Allen Hamilton ("BAH"), after BAH refused to pay her an agreed upon salary increase.

2.    In July of 2013, while working for BAH, Plaintiff received a job offer from

another employer which terms included a significant raise and the ability to work from

home. After submitting her resignation to BAH, her supervisor asked her if there

anything that he could do to keep her from leaving the company. The parties negotiated

1

for a short time and eventually came to an Agreement under which Plaintiff would receive a salary of $120,000.00 a year and the ability to work from home two days a week.

3. Relying upon this Agreement, Ms. Allen turned down the other job offer and continued to work for BAH.

4. Over the next several months, Plaintiff never received the agreed upon raise. Plaintiff repeatedly emailed BAH to inquiry about the status of said raise, but never received a sufficient answer. Finally, in September, BAH stated that it would not honor the terms of the Agreement, citing an own internal policies prevented it from paying her the agreed upon amount.

5. Plaintiff continued to work for the plaintiff until November of 2013 without ever receiving a raise before resigning and accepting a lower paying job.

### PARTIES

6. Plaintiff, Gia Allen, is an adult individual who at all relevant times has resided at 2619 Douglass Rd. SE, Unit 201, Washington, D.C. 20020. Plaintiff worked as an Associate for Defendant from April 1, 2008 to November 11, 2013.

7. Booz Allen Hamilton ("BAH") is a strategy and technology consulting for-profit corporation that is registered with and licensed to do business within the District of Columbia. BAH maintains offices and conducts substantial business with the federal government in the District of Columbia.

### JURISDICTION

8. A portion of this lawsuit arises under the District of Columbia Wage Protection and Collection Act, D.C. Code § 32-1300 *et seq.*, to remedy Defendant's failure to pay

2

Plaintiff her earned wages. This Court has jurisdiction under D.C. Code § 32-1308 and
D.C. Code 11-921(a) as a portion of the unpaid wages were earned in District of
Columbia.

9.      In addition, the Court has Personal Jurisdiction over the Defendant under D.C.
Code § 13-422 and D.C. Code § 13-423 as Defendant maintains a substantial presents
and regularly conducts business within the District of Columbia and as a portion of the
unpaid wages that Plaintiff seeks were earned while she worked within the District of
Columbia.

## FACTS

10.     BAH hired Ms. Allen as an Associate on April 1, 2008. Ms. Allen excelled in her
position and received an award and merit increases.

11.     Prior to July 17, 2013, Plaintiff reported to work exclusively at 6910 Cooper Rd.,
Fort Meade, MD 20755 for BAH's client, Defense Information Systems Agency.

### Negotiations and Agreement for a New Employment Contract

12.     On July 17, 2013, Ms. Allen received a job offer from Thomas and Herbert
Consulting. The material terms of the offer were salary of $115,000 per year and the
ability to telecommute to work five days a week.

13.     Ms. Allen decide that she would accept the position and submitted her letter of
resignation to her supervisor, Jeff McDonell, via email (E-mail from Gia Allen to Karla
Cisneros and copied to Jeffrey McDonell (July 22, 2013, 12:56 EST)) (Exhibit 1).

14.     At 4:32 P.M, Mr. McDonell sent an email stating: "Is there any chance we can
talk about the possibility of you staying with Booz Allen? Or have you already
committed to the new firm?" (E-mail from Jeffrey McDonell to Gia Allen (July 22, 2013,

3

16:32 EST)) (Exhibit 2).

15.     On July 23, 2013, Ms. Allen replied to Mr. McDonell offering the terms and conditions that she would accept to stay with BAH: "What makes the other offer most attractive is the remote delivery options.... I would be willing to stay if Booz Allen can offer $120,000K and the ability to provide the remote delivery twice a week. ... Would this work for you? If you can let me know soonest, I would really appreciate it. I will need to provide a definitive answer to the other company." (E-mail from Gia Allen to Jeffrey McDonell (July 23, 2013, 13:33 EST)) (Exhibit 3).

16.     On July 23, 2013 at 3:28 P.M, Mr. McDonell wrote back stating that the salary demand was "doable" and the two days a week telework was "acceptable" to the client. (E-mail from Jeffrey McDonell to Gia Allen (July 23, 2013, 15:28 EST)) (Exhibit 4).

17.     Mr. McDonell stated that he needed to check on some of the administrative aspects of the salary increase and requested a copy of Ms. Allen's offer from the other company. Ms. Allen provided a copy of the offer letter. (E-mail from Jeffrey McDonell to Gia Allen (July 23, 2013, 15:28 EST)) (Exhibit 4).

18.     On July 23, at 5:18 P.M., Ms. Allen wrote to Mr. McDonell asking if there is anything else that she could do and requested that Mr. McDonell provide her with a response to her offer as soon as possible so that she could inform the other employer of her decision to stay with BAH. (E-mail from Gia Allen to Jeffrey McDonell (July 23, 2013, 17:18 EST)) (Exhibit 5).

19.     On July 23 at 5:59 PM., Mr. McDonell wrote "I should have confirmation on everything tomorrow. I already know we are good on the telework, the contract will support the raise, it is just the unknown of Booz Allen management. At this point, I do

4

not see any reason this will not work out." (E-mail from Jeffrey McDonell to Gia Allen (July 23, 2013, 17:59 EST)) (Exhibit 5).

20.     Two days later, Mr. McDonell confirmed that BAH had accepted the offer made by Ms. Allen to continue to work for BAH pursuant to the negotiated terms stating that he had HR start the process for the market increase and stated that he was unsure of how long the process would take, but indicated that he hoped that it would take effect on August 1, 2013. (E-mail from Jeffrey McDonell to Gia Allen (July 25, 2013, 14:38 EST)) (Exhibit 6).

21.     Ms. Allen understood that Mr. McDonell had received the confirmation that he discussed in his July 23, 2013, 17:59 email and that the salary increase was accepted.

22.     Relying on Mr. McDonell's representation, Ms. Allen informed the other potential employer that she would not be accepting the job. (E-mail from Jeffrey McDonell to Gia Allen (July 25, 2013, 14:38 EST)) (Exhibit 6).

23.     BAH partially performed the Agreement by allowing Ms. Allen to work two days a week from her home in the District of Columbia and three days a week onsite at Defense Information Systems Agency in Fort Meade, Maryland.

24.     Ms. Allen continued to work for BAH with the understanding that she would receive her salary increase beginning August 1, 2013.

**Defendant Materially Breaches the Agreement by Failing to Pay Allen the Agreed Upon Salary**

25.     Over the next several months, Ms. Allen continued to work for BAH, but her pay checks did not reflect the agreed upon salary increase.

26.     Ms. Allen sent and received a number of emails inquiring about the status of her raise, but never receive a satisfactory answer.

27.     It was not until September 20, 2013, that BAH gave any indication that they did not intend to honor the salary increase in the Agreement because of its own internal policies regarding the pay of a cohort group, and that they wanted to meet with her to further discuss her salary. (E-mail from Gia Allen to Demetria Butler and Samuel Fuson (Sept. 20, 2013, 13:38 EST)) (Exhibit 7).

28.     Without offering any additional consideration, BAH tried to renegotiate the contract by offering Ms. Allen a salary of $115,000.00 instead of the $120,000.00. (E-mail from Gia Allen to Demetria Butler and Samuel Fuson (Sept. 20, 2013, 13:38 EST)) (Exhibit 7).

29.     Ms. Allen rejected this offer, but indicated that she would like to come to a mutual beneficial resolution.

30.     BAH then offered Ms. Allen a salary of $110,000 with a $10,000.00 retention bonus. Again, without any additional consideration. (*See* E-mail from Gia Allen to Demetria Butler and Samuel Fuson (Sept. 25, 2013, 13:08 EST)) (Exhibit 8).

31.     This offer was again rejected because while it provide Ms. Allen with a total of $120,000.00 for the first year, it had negative long term effects upon Ms. Allen's earning potential for three reasons: 1) the single bonus would be taxed at a higher rate than salary; 2) the retention bonus was contingent upon her staying at BAH for 12 months or would have to be repaid; and 3) this arrangement would negatively affect her future salary and pay increases. (E-mail from Gia Allen to Demetria Butler and Samuel Fuson (Sept. 25, 2013, 13:08 EST)) (Exhibit 8).

32.     Despite Ms. Allen's continued attempt to come to a resolution over the course of several months, BAH refused to increase Ms. Allen's salary as agreed.

33.     During this time, Ms. Allen became increasingly frustrated with the lack of progress in her renegotiations.

34.     On November 10, 2013, Ms. Allen submitted formal notification of her resignation from BAH effective November 12, 2013.  Ms. Allen's resignation letter states that she could "no longer continue [her] employment because [BAH] has refused to honor the terms of [her] salary increase that were agreed upon in July." (Letter from Gia Allen to Rafiq Jamaldinian, Resignation Letter (Nov. 10, 2013)) (Exhibit 9).

35.     Following her resignation, undersigned counsel spoke with Ray E. Donahue, Esq. BAH's Associate General Counsel to request that Ms. Allen be paid the difference between what she was promised and what she was actually paid. Mr. Donahue requested that Counsel submit a written demand.

36.     On January 27, 2014, Plaintiff's counsel submitted the demand. As of the date of filing, Plaintiff has not received a response. (Demand Letter from Attorney Peter Silva II to Defendant (Jan. 27, 2014)) (Exhibit 10).

**Damages Suffered by Plaintiff**

37.     After resigning her position with Defendant, Ms. Allen accepted a position at a salary of $104,000.00 per year, which is $11,000.00 less than the offer from the Thomas and Herbert Consulting, and $16,000.00 less than the Agreement with BAH.

38.     From August 1, 2013 and November 11, 2013, Plaintiff received $4,936.00 less in wages than she was entitled to under the Agreement.

39.     In addition, BAH only paid Ms. Allen for 105.37 hours of PTO when Ms. Allen had actually accrued 111.5 hours, which resulted in an under payment of $246.60.

7

## CAUSES OF ACTIONS

### COUNT I - BREACH OF CONTRACT

40.    Plaintiff incorporates by reference paragraphs 1-39 above.

41.    Plaintiff offered to continue to work for BAH with the specific terms of a salary of $120,000.00 a year and the ability to telecommute to work two days a week.

42.    Defendant's agent accepted the offer in an email.

43.    Plaintiff performed her duties under the Agreement by continuing to work for BAH.

44.    Defendant partially performed its duties under the contract by allowing Plaintiff to work from home two days a week.

45.    While continuing to accept the benefits of Plaintiff's work, BAH materially breached its contractual obligation to Ms. Allen by it refused to pay Ms. Allen the increased salary she had been promised beginning August 1, 2013.

46.    Plaintiff has suffered economic damages because of Defendant's breach.

47.    Plaintiff is entitled to recoup the damages she has suffered in an amount no less than the actual damages suffered by Plaintiff.

### COUNT II - VIOLATION OF DISTRICT OF COLUMBIA WAGE PAYMENT AND COLLECTION ACT D. C. CODE § 32-1300 *ET SEQ.* ("DCWPCA")

48.    Plaintiff repeats and incorporates in the Count the allegations made in Paragraphs 1-47 of this Complaint as if fully set forth herein.

49.    D. C. Code § 32-1300 *et seq.* makes it unlawful: for an employer to fail to pay wages to its employees and provides a private right of action for the employee to bring a civil action to recover unpaid wages.

50.    Defendants have violated DCWPCA by not paying Plaintiff her back wages of

within 7 days of her resignation. D.C. Code § 32-1303(2).

51.   Defendant is an "Employer" as defined in § 32-1301(1).

52.   Plaintiff was an "Employee" for the relevant time period within the meaning of §32-1301(2).

53.   The money owed to the Plaintiff qualifies as "wages" under the Act. §32-1301(3).

54.   There is no bona fide dispute over the amount of wages due to the Plaintiff. D.C. Code § 32-1304.

55.   Plaintiff worked two days a week from her home in the District of Columbia.

56.   As of the date of filing, Defendant has failed to pay the wages owed.

57.   As the result of Defendants' violation of the Wage Payment and Collection Law, Plaintiff is entitled to recover her unpaid wages, liquidated damages of 10% of the unpaid wages per working day up to the total amount of back wages due after the date of her termination and reasonable attorney's fees and costs of this action pursuant to D.C. Code §32-1303(4).

## COUNT III - MARYLAND WAGE PAYMENT AND COLLECTION ACT MD. CODE ANN., LAB. & EMPL. § 3-500 ET SEQ. (2008) ("MWPCL")

58.   Plaintiff repeats and incorporates in the Count the allegations made in Paragraphs 1-57 of this Complaint as if fully set forth herein.

59.   Maryland Wage Payment and Collection Act Md. Code Ann., Lab. & Empl. § 3-501(c) (2008) ("MWPCA") requires that an employer pay an employee or the authorized representative of an employee all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated, and provides a private cause of action for an employee to bring a civil action to recoup the

wages.

60.     Defendant has violated the MWPCA by failing to pay plaintiff her full wages within two (2) weeks of the regularly scheduled pay day following her resignation.

61.     Defendant is an "Employer" as defined by the MWPCA. Md. Code Ann., Lab. & Empl. § 3-501(b) (2008).

62.     The money owed to the Plaintiff qualifies as "wages" under the MWPCA. Md. Code Ann., Lab. & Empl. § 3-501(c) (2008).

63.     There is no bona fide dispute over the amount of wages due to the Plaintiff. Md. Code Ann., Lab. & Empl. § 3-507.2(b).

64.     Plaintiff worked three days a week at the Defense Information Systems Agency in Fort Meade, Maryland.

65.     As a result of Defendant's violation of the MWPCA, Plaintiff is entitled to recover up to three times the amount of unpaid wages, plus attorneys' fees and other costs. Md. Code. Ann. Lab. & Empl. §§ 3-507.1, 3-507.2 (2010).

### COUNT IV - NEGLIGENT MISREPRESENTATION UNDER MARYLAND LAW

66.     Plaintiff repeats and incorporates in the Count the allegations made in Paragraphs 1-65 of this Complaint as if fully set forth herein.

67.     Plaintiff alleges that Maryland law is proper for this count as Plaintiff and Defendant were physically located with the State of Maryland when the false statements were made.

68.     Plaintiff alleges that BAH's employee Mr. McDonell negligently misrepresented that an increased salary was acceptable to the company, as a result, Plaintiff has was injured.

10

69.     Mr. McDonell owed Plaintiff a special duty of care within the employer-employee relationship and because his statements were in regards to her salary and benefits.

70.     Mr. McDonell misrepresented that Plaintiff would receive a salary increase to $120,000.00.

71.     Mr. McDonell knew that Plaintiff would rely on his representations regarding the salary increase.

72.     It was reasonably foreseeable that Plaintiff would be injured if Mr. McDonell's representations were erroneous because he knew that Plaintiff had another job offer.

73.     Plaintiff justifiably relied upon his statements by turning down the other job offer and continuing to work for BAH.

74.     Plaintiff suffered damage that was proximately caused by the defendant's negligence because her new position only pays a salary of $104,000.00 per year, which is $16,000.00 per year less than the Agreement with BAH.

75.     Therefore, Plaintiff is entitled to recover consequential damages in the amount of no less than $32,000.00.

## COUNT V – PROMISSORY ESTOPPEL/DETRIMENTAL RELIANCE

76.     Plaintiff repeats and incorporates in the Count the allegations made in Paragraphs 1-75 of this Complaint as if fully set forth herein.

77.     Plaintiff asserts that she is entitled to recovery against Defendant under the theory of promissory estoppel because she detrimentally relied upon Mr. McDonell's promise of a raise.

78.     Defendant promised Plaintiff that her salary would be increased to $120,000.00 a year.

11

79.     An promise of a substantial raise in salary by a supervisor reasonably induces reliance

80.     Plaintiff relied upon the promise to her detriment by turning down the other employment offer.

81.     Therefore, Defendant should be estopped from asserting that there was no contract and Plaintiff should be entitled to recovery the consequential damages that she has suffered.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the Court grant the following relief:

1. Award Plaintiff one duplicative award of actual damages no less than $5,182.00 against Defendants for actual damages under Breach of Contract, Maryland Wage Payment and Collection Act, and District of Columbia Wage Payment and Collection Act.

2. Award Plaintiff one duplicative award for her consequential damages in the amount of no less than $32,000.00 under negligent misrepresentation and promissory estoppel.

3. Award Plaintiff up to three times the amount of the unpaid wages for work performed within the State of Maryland because of Defendant's violation of the MWPCA, as provided in Md. Code. Ann. Lab. & Empl. §§ 3-507.1, 3-507.2 (2010).

4. Award Plaintiff liquidated damages in twice the amount of the unpaid wages for work performed within the District of Columbia because of Defendant's violation of the DCWPA, as provided in D.C. Code §32-1303(4).

5. Award Plaintiff her reasonable attorneys' fees and costs against Defendant under the MDWPA, Md. Code. Ann. Lab. & Empl. §§ 3-507.1, 3-507.2 (2010), and the DCWPA, D.C. Code §32-1303(4).

6. Such other relief as may be just and proper.

**TRIAL BY JURY IS DEMANDED**

Respectfully Submitted,

/s/ F. Peter Silva II
F. Peter Silva II, Esq., D.C. Bar # 1010483
Gowen Group Law Office, PLLC
1325 G St. NW, Suite 500
Washington, D.C. 20005
Tel: (202) 380-9355
Fax: (202) 499-1370
Peter.Silva@gowengroup.com
Info@Gowengroup.com

13

Resignation                                                                                    9/26/13 10:05

# Resignation

## Allen, Gia [USA]
**Sent:** Monday, July 22, 2013 12:56 PM
**To:** Cisneros, Karla [USA]
**Cc:** Gray, Michael [USA]; McDonell, Jeffrey [USA]; michael.o.gray4.ctr@mail.mil



Dear Karla:

Please accept this letter as formal notification that I am leaving my position with Booz Allen Hamilton effective August 2, 2013.

Thank you so much for the opportunities that you have provided me during my time with the company. You have been a wonderful career manager and will be sincerely missed.  If I can be of any assistance during this transition, please let me know.

Best in all things,
Gia

9/26/13 10:31 PM

**From:** McDonell, Jeffrey [USA]
**Sent:** Monday, July 22, 2013 4:32 PM
**To:** Allen, Gia [USA]
**Subject:** Resignation



Gia

Is there any chance we can talk about the possibility of you staying with Booz Allen?  Or have you already committed to the new firm?

Jeff

Jeff McDonell
Booz Allen Hamilton
13200 Woodland Park Road
Herndon, VA  20171-3025
(O) 703-984-1084
(C) 703-298-5650
Mcdonell_jeffrey@bah.com

RE: Resignation                                                                                  9/26/13 10:31 PM

days make the most sense. But let me check with the client to see what they are comfortable with. 

J.

**From:** Allen, Gia [USA]
**Sent:** Tuesday, July 23, 2013 1:33 PM
**To:** McDonell, Jeffrey [USA]
**Subject:** RE: Resignation

Jeff,

What makes the other offer most attractive is the remote delivery option. My issue is that the commute to and from DISA is a bit tough. I would be willing to stay if Booz Allen can offer $120,000K and the ability to provide remote delivery twice a week. Furlough days probably would work the best for everyone as the client is not on site.

Would this work for you? If you can let me know soonest, I would really appreciate it. I will need to provide a definitive answer to the other company.

Best,
Gia

**From:** McDonell, Jeffrey [USA]
**Sent:** Tuesday, July 23, 2013 10:33 AM
**To:** Allen, Gia [USA]
**Subject:** RE: Resignation

Gia

I am working thru your management team, but am attempting to get Booz Allen to offer you $117,500. Would that be sufficient to keep you at Booz Allen?

Jeff

**From:** Allen, Gia [USA]
**Sent:** Monday, July 22, 2013 5:35 PM
**To:** McDonell, Jeffrey [USA]
**Subject:** RE: Resignation

Jeff,

I haven't officially committed to the new firm. However, I received a really good offer. It is a 15% increase in salary and I have the option to work from home.

Is this something that you feel Booz Allen can meet or exceed? If so, I would not mind staying with my current DISA team. I really enjoy working with them.

Best,
Gia

**To:** Allen, Gia [USA]
**Subject:** RE: Resignation

EXHIBIT

Thanks Gia.

I assume you are OK with me pushing ahead?

Jeff

---

**From:** Allen, Gia [USA]
**Sent:** Tuesday, July 23, 2013 4:04 PM
**To:** McDonell, Jeffrey [USA]
**Subject:** RE: Resignation

$\left( 6 \right)$

Jeff,

Attached, please find a copy of the offer letter.

Thanks,

Gia

---

**From:** McDonell, Jeffrey [USA]
**Sent:** Tuesday, July 23, 2013 3:28 PM
**To:** Allen, Gia [USA]
**Subject:** RE: Resignation

$\left( 6 \right)$

So, the increase in salary is doable, and I have confirmed with DISA that two days per week telework is acceptable as well. Now I have to check on how I go about initiating a salary increase that is, in essence, out of cycle and not attributed to assessment actions. I will need a copy of the offer letter in order to do that though. Is that something you can forward a copy of to me?

J.

---

**From:** Allen, Gia [USA]
**Sent:** Tuesday, July 23, 2013 2:33 PM
**To:** McDonell, Jeffrey [USA]
**Subject:** RE: Resignation

Ok.

---

**From:** McDonell, Jeffrey [USA]
**Sent:** Tuesday, July 23, 2013 1:51 PM
**To:** Allen, Gia [USA]
**Subject:** RE: Resignation

$\left( 5 \right)$

Gia

Let me check on a few things to see. The biggest hurdle will be twice weekly remote delivery. I agree, furlough

# RE: Resignation

**Allen, Gia [USA]**
**Sent:** Wednesday, July 24, 2013 10:20 AM
**To:**   McDonell, Jeffrey [USA]



Thanks so much, Jeff.  I will await to hear from you.

Best,
Gia

---

**From:** McDonell, Jeffrey [USA]
**Sent:** Tuesday, July 23, 2013 5:59 PM
**To:** Allen, Gia [USA]
**Subject:** RE: Resignation

(9)

Gia,

I should have confirmation on everything tomorrow. I already know we are good on the telework, the contract will support the raise, it is just the unknown of Booz Allen management that I have to address. At this point, I do not see any reason this will not work out. I would just like to get an OK from Level 4/5 to ensure we have the backing.

Thanks for your patience with this. I really, really do want to keep you on the project.

Jeff

---

**From:** Allen, Gia [USA]
**Sent:** Tuesday, July 23, 2013 5:18 PM
**To:** McDonell, Jeffrey [USA]
**Subject:** FW: Resignation

(8)

Jeff,

Is there anything more that you will need from me? Would you mind letting me know when things are clear on your end? I want to be able to let the other company know of my intentions to stay with Booz as a result of our negotiated terms.

Thanks, Gia

---

**From:** Allen, Gia [USA]
**Sent:** Tuesday, July 23, 2013 4:08 PM
**To:** McDonell, Jeffrey [USA]
**Subject:** RE: Resignation

(7)

Yes. I am.

---

**From:** McDonell, Jeffrey [USA]
**Sent:** Tuesday, July 23, 2013 4:05 PM

9/26/13 10:33 PM

Reply   Reply All   Forward   Chat



# RE: Market Salary Increase

## Allen, Gia [USA]

To:          McDonell, Jeffrey [USA]

Thursday, July 25, 2013 2:39 PM

Thanks, Jeff.   Sure we can connect then.

---

**From:** McDonell, Jeffrey [USA]
**Sent:** Thursday, July 25, 2013 2:38 PM
**To:** Allen, Gia [USA]
**Subject:** Market Salary Increase

Gia

I have HR started on the process for your market salary increase.   I do not have any idea how long it takes, but I would guess a few days at least.   Hopefully such that it can take effect on 1 Aug.   I'll keep you advised as I hear about where in the process it is.

Monday after our sync up with everyone, can you spare a few minutes so we can map out how to execute the telework portion?

Thanks,

Jeff

Jeff McDonell
Booz Allen Hamilton
13200 Woodland Park Road
Herndon, VA  20171-3025
(O) 703-984-1084
(C) 703-298-5650
Mcdonell_jeffrey@bah.com

9/26/13 11:39 PM

# RE: Status Update Follow Up



Allen, Gia [USA]
**Sent:** Friday, September 20, 2013 1:38 PM
**To:**  Butler, Demetria [USA]; Fuson, Samuel [USA]
**Cc:**  McDonell, Jeffrey [USA]

Sam/Demetria,

Based on emails between Jeff McDonnell and I (in July of 2013), I was offered an annual salary of 120K in order for Booz Allen to retain my employment services. The sum of which I accepted with the expectation that Booz Allen would honor the agreed upon terms. During our meeting today, it was expressed to me that the original offer (made over two months ago) would not be feasible. I was then presented with an adjusted counter offer, an annual salary of 115K. As you both are aware, I am deeply displeased by the sudden change in direction and the timing of this decision. Based on the original negotiated terms, I relied on what was expressed to me by representatives of Booz Allen management and, in good faith, I made an employment decision that has caused me to reject a potentially better offer outside of the firm.

As I mentioned, I strongly believe in your ability to resolve this issue in way that is amenable. I look forward to speaking with you on Monday to discuss further remediation.

Best,
Gia

---

**From:** Butler, Demetria [USA]
**Sent:** Friday, September 20, 2013 12:02 PM
**To:** Fuson, Samuel [USA]; Allen, Gia [USA]
**Subject:** Status Update Follow Up
**When:** Monday, September 23, 2013 3:30 PM-4:00 PM.
**Where:** Dial-In Information 1-877-885-1087 ,,6155781039# Host Code: (Demetria)

Greetings All,

We are confirmed for Monday, September 23rd at 3:30pm.

Thanks,
Demetria

*Demetria Butler*

Sr. Human Resources Specialist
Booz | Allen | Hamilton
3811 N. Fairfax Drive, Suite 600
Arlington, VA  22203
Tel: 703-816-5498
butler_demetria@bah.com

Please log on to **people.bah.com** for detailed information about policies, procedures, benefits, and to review your personal information.  US-based employees may now submit online changes to personal data such as name, address, home phone number and emergency contacts.



**From:** Allen, Gia [USA]
**Sent:** Wednesday, September 25, 2013 1:08 PM
**To:** Butler, Demetria [USA]; Fuson, Samuel [USA]
**Subject:** RE: Status Update Follow Up



Demetria/Sam,

Thank you for today's call.  Just to recap, the newest counter offer Booz Allen is proposing is 110K and 10K retention bonus.  Based on Demetria input, stipulations to the bonus are :

(1) The bonus will be taxed at a higher rate than regular salary pay
(2) Retention bonuses require that the employee stay with Booz Allen at least 12 months or be subject to repayment
(3) This arrangement can affect future increases to my pay

Based upon our conversation, my understanding is that the adjustment now allows me to be competively priced among my cohort.  I want to ensure that I clearly understand the terms before I make any decisions.  Also, can you please advise whether the salary increase adjustment is slated for Aug 1st or Aug 2nd of 2013.  As I mentioned, I am working hard to complete a deliverable for the client and will need time to think this over.  Let's convene on Tuesday October 1, 2013 to discuss further.

Best in all things,

Gia

---

**From:** Allen, Gia [USA]
**Sent:** Wednesday, September 25, 2013 12:33 PM
**To:** Butler, Demetria [USA]; Fuson, Samuel [USA]
**Subject:** RE: Status Update Follow Up

Demetria,

Can you please validate that the adjusted date for the salary increase that you and Sam proposed on Friday is August 1 or Aug 2, 2013?

Best,

Gia

---

**From:** Allen, Gia [USA]
**Sent:** Wednesday, September 25, 2013 12:23 PM
**To:** Butler, Demetria [USA]; Fuson, Samuel [USA]
**Subject:** RE: Status Update Follow Up

Sam/Demetria,

I am also open until 1pm.



**VIA EMAIL**

**Sunday, November 10, 2013**

Booz Allen Hamilton
Attn: Rafiq Jamaldinian
308 Sentinel Drive
Annapolis Junction, MD 20701

Rafiq:

Please accept this letter as formal notification that I am resigning my position with Booz Allen Hamilton effective November 12, 2013. I appreciate the professional growth I gained during my employment at the firm and sincerely wish you all the best. However, I can no longer continue my employment because Booz Allen Hamilton has refused to honor the terms of my salary increase that were agreed upon in July.

My honest desire is to put this entire situation behind me and allow myself and the firm to move on. I believe that a termination benefit package will allow me to do so. Upon receipt of satisfactory benefit package, I am willing to sign a full release. Please contact me through my attorney Peter Silva to arrange the return of my computers and ID badges and discuss the terms of the benefit package. He can be reached at 703-996-9489 or Peter.Silva@gowengroup.com.

Thank you for your understanding.

Regards,

Gia Allen

CC:

Jeffrey McDonnel - (via email)
Karla Cisneros - (via email)
Michael Gray - (via email)
Demetria Butler - (via email)
Samuel Fusion - (via email)



# The Gowen Group Law Office, PLLC

1325 G Street N.W., Suite 500 | Washington, D.C. 20005

Phone: (202) 380-9355 | Fax: (202) 499-1370



*For Settlement Purposes Only*

January 27, 2014

**VIA EMAIL**

Ray E. Donahue, Esq.
Associate General Counsel
Booz, Allen Hamilton
8283 Greensboro Drive, H9038
McLean, Virginia 22102-3830

**RE: Termination of Gia Allen and Proposed Settlement.**

Dear Mr. Donahue,

Per our conversation on November 18, 2013, I am writing to detail the facts that led to the resignation of my client, Ms. Gia Allen's, from Booze Allen Hamilton ("BAH") and legal claims Ms. Allen has against BAH. As previously stated, Ms. Allen strongly desires to settle this matter.

## A. Facts

BAH hired Ms. Allen as an Associate on April 1, 2008. Ms. Allen excelled in her position and received an award and merit increases. On July 17, 2013, Ms. Allen received a job offer from Thomas and Herbert Consulting. The material terms of the offer were salary of $115,000 per year and the ability to telecommute to work five days a week. Ms. Allen decide that she would accept the position and submitted her letter of resignation to her supervisor, Jeff McDonell, via email (E-mail from Gia Allen to Karla Cisneros and copied to Jeffrey McDonell (July 22, 2013, 12:56 EST)) (Attached 1).

At 4:32 P.M, Mr. McDonell sent an email stating: "Is there any chance we can talk about the possibility of you staying with Booz Allen? Or have you already committed to the new firm?" (E-mail from Jeffrey McDonell to Gia Allen (July 22, 2013, 16:32 EST)) (Attached 3).

This led to an email discussion between Mr. McDonell and Ms. Allen which culminated in the parties entering into an agreement whereby Ms. Allen would receive a salary increase and be able to work at home two days a week to stay at BAH. (Attached 2-10).

On July 23, 2013, Ms. Allen replied to Mr. McDonell offering the terms and conditions that she would accept to stay with BAH: "What makes the other offer most attractive is the remote delivery options.... I would be willing to stay if Booz Allen can offer $120,000K and the ability to provide the remote delivery twice a week. ... Would this work for you? If you can let me know soonest, I would really appreciate it. I will need to provide a definitive answer to the other

company." (E-mail from Gia Allen to Jeffrey McDonell (July 23, 2013, 13:33 EST)) (Attached 4).

On July 23, 2013 at 3:28 P.M, Mr. McDonell wrote back accepting the offer stating that the salary demand was "doable" and the two days a week telework was "acceptable" to the client. Mr. McDonell stated that he needed to check on some of the administrative aspects of the salary increase and requested a copy of Ms. Allen's offer from the other company. Ms. Allen provided a copy of the offer letter. (E-mail from Jeffrey McDonell to Gia Allen (July 23, 2013, 15:28 EST)) (Attached 6).

At 5:18 P.M., Ms. Allen wrote to Mr. McDonell asking if there is anything else that she could do and requested that Mr. McDonell provider her with a response to her offer as soon as possible so that she could inform the other employer of her decision to stay with BAH. (E-mail from Gia Allen to Jeffrey McDonell (July 23, 2013, 17:18 EST)) (Attachment 8).

At 5:59 PM., Mr. McDonell wrote "I should have confirmation on everything tomorrow. I already know we are good on the telework, the contract will support the raise, it is just the unknown of Booz Allen management. At this point, I do not see any reason this will not work out." (E-mail from Jeffrey McDonell to Gia Allen (July 23, 2013, 17:59 EST)) (Attached 9).

Two days later, Mr. McDonell confirmed BAH's had accepted the offer made by Ms. Allen to continue to work for BAH pursuant to the negotiated terms stating that he had HR start the process for the market increase and stated that he was unsure of how long the process would take, but indicated that he hoped that it would take effect on August 1, 2013. Ms. Allen, as any reasonable person, would understood that Mr. McDonell had received the confirmation that he discussed in his prior email and that the salary increase was accepted. After specifically asking Mr. McDonell if she should, Ms. Allen informed the other potential employer that she would not be accepting the job. (E-mail from Jeffrey McDonell to Gia Allen (July 25, 2013, 14:38 EST)) (Attached 10).

Ms. Allen continued to work for BAH under the understanding that she would receive her salary increase beginning August 1, 2013. However, this was not the case. Over the next several months, Ms. Allen sent and received dozens of emails inquiring about the status of her raise, but never receive a satisfactory answer. It was not until September 20, 2013, that she was informed that BAH did not intend to comply with the terms of the agreement that the parties had entered into because of its own internal policies regarding the rates of pay for employees in a cohort. BAH attempted to force Ms. Allen to accept at salary of $115,000 instead of the $120,000 without any additional consideration. (E-mail from Gia Allen to Demetria Butler and Samuel Fuson (Sept. 20, 2013, 13:38 EST)) (Attached 32).

Ms. Allen rejected this offer, but indicated that she would like to come to a mutual beneficial resolution. BAH then offered Ms. Allen a salary of $110,000 with a $10,000.00 retention bonus. This offer was again rejected because while it provide Ms. Allen with a total of $120,000.00 for the first year, it had negative long term effects upon Ms. Allen's earning potential for three



reasons: 1) the single bonus would be taxed at a higher rate than salary; 2) the retention bonus was contingent upon her staying at BAH for 12 months or would have to be repaid; and 3) this arrangement would negatively affect her future salary and pay increases. (E-mail from Gia Allen to Demetria Butler and Samuel Fuson (Sept. 25, 2013, 13:08 EST)) (Attached 35).

Despite Ms. Allen's continued attempt to come to a resolution over the course of several months, BAH refused to increase Ms. Allen's salary as agreed upon. On November 10, 2013, Ms. Allen submitted formal notification of her resignation from BAH effective November 12, 2013. Ms. Allen's resignation letter stipulates that she could "no longer continue [her] employment because [BAH] has refused to honor the terms of [her] salary increase that were agreed upon in July."

### B. Causes of Action

There are at least four causes of action that Ms. Allen can recovery under for BAH's conduct in this matter.

### i. Breach of Contract

BAH breached its contractual obligation to Ms. Allen when it failed to pay Ms. Allen increased salary she had been promised beginning August 1, 2013. A contract creates rights or obligations between parties, and "is to be interpreted so as to give effect to the parties' intentions at the time the contract was made." *Barufaldi v. Ocean City, Chamber of Commerce, Inc.*, 7 A.3d 643, 653 (Md. App. 2010). A breach of contract is "a failure without legal excuse to perform any promise which forms the whole or part of a contract..." *In re Ashby Enters., Ltd.*, 250 B.R. 69, 72 (Bankr. D. Md 2000) (quoting *Conn. Pizza, Inc. v. Bell Atl.-Wash., D.C., Inc.*, 193 B.R. 217, 225 (Bankr. D. Md. 1996)).

Upon promising to increase Ms. Allen's annual salary to $120,000.00, BAH had a legally enforceable obligation to do so. BAH's failure to increase Ms. Allen's salary beginning August 1, 2013 constituted a violation of BAH's obligation to Ms. Allen.

### ii. Maryland and District of Columbia Wage Payment and Collection Law

Ms. Allen can successfully recover her back wages, additional damages and attorneys' fees under both the Maryland and District of Columbia wage protection statutes. A well-recognized principle is that "an employee who has performed services required in an employment contract has a vested right to the compensation he or she has earned." *Barufaldi v. Ocean City, Chamber of Commerce, Inc.*, 7 A.3d 643, 654-55 (Md. App. 2010) (quoting Richard A. Lord, 19 *Williston on Contracts* 54:35 at 520 (4th ed. 2001)). Consistent with this principle, courts have held that wage laws require "employers, upon the termination of an employee's employment, to pay that employee … 'all wages due for work that the employee performed before the date of



termination of employment…'" *Whiting-Turner Contracting Co. v. Fitzpatrick*, 783 A.2d 667, 671 (Md. 2001) (discussing Md. Code Ann., Lab. & Empl. § 3-505 (2008)).

Maryland defines "wages" as "all compensation that is due to an employee for employment." Md. Code Ann., Lab. & Empl. § 3-501(c) (2008). The term "wages" includes: "(i) a bonus; (ii) a commission; (iii) a fringe benefit; or (iv) any other remuneration promised for service." Md. Code Ann., Lab. & Empl. § 3-501(c) (2008).

As shown above, relevant wage laws require an employer, upon the termination of an employee's contract, to pay the employee "any remuneration, other than salary, that is promised in exchange for the employee's work." *Whiting-Turner Contracting Co. v. Fitzpatrick*, 783 A.2d 667, 672 (Md. 2001). "Once a bonus, commission or fringe benefit has been promised as a part of the compensation for service, the employee would be entitled to its enforcement as wages." *Id.*

The Maryland Wage Payment and Collection Law allows an employee to bring an action against an employer to recover up to three times the amount of unpaid wages, plus attorneys' fees and other costs. Md. Code. Ann. Lab. & Empl. §§ 3-507.1, 3-507.2 (2010).

Similarly, The Washington, D.C. Wage Payment and Collection Law allows an employee to bring an action against an employer to recover unpaid wages. D.C. Code Ann. 32-1308(a).  In Washington, D.C. such an employee is entitled to recover "10 per centum [10%] of the unpaid wages for each working day during which such failure shall continue after the day upon which payment is hereunder required, or an amount equal to the unpaid wages…." D.C. Code Ann. 32-1303(4).

The statute defines "wages" as "all monetary compensation after lawful deductions, owed by an employer whether the amount owed is determined on a time task, piece, commission, or other basis of calculation." D.C. Code Ann. 32-1301(3). The 2013 Amendments to this Act state that the term "wages" includes a "(A) Bonus; (B) Commissions (C) Fringe benefits paid in cash; (D) Overtime premium; and (E) Any "remuneration promised or owed: (i) Pursuant to a contract for employment, whether written or oral; (ii) Pursuant to a contract between an employer and another person or entity; or (iii) Pursuant to District or federal law." *Id.*

Once Ms. Allen had been promised a pay raise, she was entitled to receive a $120,000 annual salary. However, to date, BAH has only paid Ms. Allen the salary she had received prior to Mr. McDonell's promise. Therefore, BAH underpaid Ms. Allen for over three months prior to her resignation in November of 2012, and she is entitled to recovery between two and three times the difference in addition to attorneys' fees, costs, and other damages.

   iii.   <u>Negligent Misrepresentation</u>

Ms. Allen can bring a successful cause of action for negligent material misrepresentation because Mr. McDonnel made either a false or negligent misrepresentation that the salary



GOWEN GROUP

increase should be effective within a few days. Maryland courts have held that, in the context of an employment relationship, "an employer may be obligated to exercise reasonable care in making representations to" employees regarding prospective salaries and benefits. *Griesi v. Atlantic General Hosp. Corp.*, 756 A.2d 548, 555 (Md. 2000) (citing *Wiesman v. Connors*, 540 A.2d 783, 793 (Md. 1988)). The special nature of the employer-employee relationship may give rise to the employer's duty to exercise reasonable care to convey accurate information to the employee. *Griesi v. Atlantic General Hosp. Corp.*, 756 A.2d 548, 555 (Md. 2000) (citing *Wiesman v. Connors*, 540 A.2d 783, 793 (Md. 1988)). Ms. Allen and Mr. McDonell developed a special relationship, as evidenced by the intensive communications between them regarding Ms. Allen's salary increase.

In *Griesi v. Atlantic General Hosp. Corp.*, the Maryland Court of Appeals addressed negligent misrepresentation where Slater, the interim president of Atlantic General, negligently misrepresented that a job would be available for Griesi, a potential employee. 756 A.2d 548, 556 (Md. 2000). Relying on the oral employment offer made by Slater, Griesi turned down other job offers only to find that no position was available at Atlantic General. *Id.* The court determined that negligent misrepresentation applied to the at-will employment context, and found it particularly important "that Atlantic General failed to exercise reasonable care in communicating information to [Griesi] that was material to his business decision whether to accept the offer ... that he relied on those misrepresentations, and suffered injury as a direct result of that reliance." *Id.* at 557. The court additionally held that, because Slater was aware of Griesi's other job offers, "it was foreseeable that Griesi might suffer some economic injury, having rejected the other offer(s), if his employment offer from Atlantic General was a nullity." *Id.* at 558.

The situation at hand is very similar to the one in *Griesi*. Indeed, Ms. Allen had developed more of a special relationship with Mr. McDonell than existed in *Griesi*, and Mr. McDonell concretely promised Ms. Allen that she would receive a pay raise if she turned down her existing job offer and continued to work for BAH. In this situation, it was obviously foreseeable that Ms. Allen would suffer an economic injury if BAH did not raise her salary as promised. As in *Griesi*, Ms. Allen "put confidence in the accuracy" of Mr. McDonell's clear promises of a salary raise "and that he had authority, or apparent authority, to make such an offer." *Id.* at 556. Ms. Allen, relying on BAH's representations, turned down her existing job offer. But for Ms. Allen's reliance on the promises made by BAH, she would have resigned from BAH, effective August 1, 2013. Under Maryland law, Ms. Allen can recover consequential damages in a negligent misrepresentation cause of action. *Id.* at 558-9.

## C. Damages

Ms. Allen has suffered the following damages:
- Over the course of three and a half months, BAH failed to pay Ms. Allen $4,936.00 in wages that she was owed under the agreement.



- BAH only paid Ms. Allen for 105.37 hours of PTO when Ms. Allen had actually accrued 111.5 hours, which resulted in an under payment of $246.60.
- Ms. Allen's new position only pays a salary of $104,000.00 per year, which is $11,000.00 less than the offer from the Thomas and Herbert Consulting, and $16,000.00 less than the contract with BAH.
- Ms. Allen has also incurred attorneys' fees as well as suffered from emotional distress, lost time, inconvenience and aggravation because of BAH's conduct.

Therefore, we propose the following settlement terms:

- A lump sum payment of $20,000.00;
- a positive reference for future employment; and
- the designation of re-hirable within BAH.

We assume it is in the interest of BAH to resolve this matter without litigation. Please contact me at the information below to discuss so we can avoid escalating the matter. I look forward to hearing from you.

Sincerely,

THE GOWEN GROUP LAW OFFICE, PLLC

F. Peter Silva II, Esq.
Partner




GOWEN
GROUP





## TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
### DIVISIÓN CIVIL
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Teléfono: (202) 879-1133**

_____ Demandante

contra

_____

Número de Caso: _____

_____ Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

*SECRETARIO DEL TRIBUNAL*

_____
Nombre del abogado del Demandante

Por: _____

_____
Dirección

Subsecretario

_____
Teléfono

Fecha _____

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시오       የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

GIA ALLEN
Vs.                                                    C.A. No.      2014 CA 001056 B
BOOZ ALLEN HAMILTON

### INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference _once_, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge NEAL E KRAVITZ
Date:  February 21, 2014
Initial Conference: 9:30 am, Friday, May 23, 2014
Location:   Courtroom 219
              500 Indiana Avenue N.W.
              WASHINGTON, DC 20001                              Caio.doc



## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc