UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GIA ALLEN, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>BOOZ ALLEN HAMILTON, )<br>)<br>    Defendant. ) | Civil Case No. 14-00443 (RJL) |

**FILED**
FEB 2 3 2015
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**MEMORANDUM OPINION**
February 22, 2015 [Dkt. ## 7, 9]

Plaintiff Gia Allen ("plaintiff" or "Allen") filed this action against defendant Booz Allen Hamilton ("defendant" or "Booz Allen"), a strategy and technology consulting firm, in D.C. Superior Court on February 21, 2014, alleging breach of contract; violation of the D.C. Wage Payment and Collection Act, D.C. Code § 32-1301 *et seq.* ("DCWPCA"); violation of the Maryland Wage Payment and Collection Act, Md. Code Ann., Lab. & Empl. § 3-501, *et seq.* ("MWPCA"); negligent misrepresentation; and promissory estoppel. *See* Compl. [Dkt. # 1-1], at ¶¶ 40-81. The case was removed to this Court on the basis of diversity jurisdiction on March 18, 2014. *See* Notice of Removal [Dkt. # 1]. Plaintiff then moved to remand the case to the Superior Court on April 7, 2014, and defendant moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on April 11, 2014. *See* Mot. to Remand [Dkt. # 7]; Mot. to Dismiss [Dkt. # 9]. Because I agree with defendant that plaintiff has

1

failed to state a claim, defendant's motion is GRANTED, plaintiff's motion is DENIED as moot, and the case is DISMISSED.[1]

## FACTUAL BACKGROUND

Plaintiff began working for Booz Allen as an associate in April 2008 and worked exclusively on a contract for one of Booz Allen's clients, the Defense Information Systems Agency ("DISA"). Compl. at ¶¶ 10-11. Around July 2013, plaintiff received a job offer from another employer at a salary of $115,000, slightly higher than her $100,000 salary at Booz Allen. Compl. ¶¶ 12, 38. Plaintiff attempted to leverage that offer to secure a salary increase from Booz Allen by telling the Project Manager on the DISA contract that she would stay at Booz Allen if Booz Allen would pay her a salary of $120,000. Compl. ¶ 15. Over the ensuing days and weeks, plaintiff engaged in several e-mail conversations regarding her salary with the DISA contract Project Manager. Compl. ¶¶ 14-20, 26-31, Exs. 4-6. During the negotiations, two main issues arose: (1) whether plaintiff could work remotely, and (2) whether plaintiff could receive a salary increase. *See* Def.'s Mem. in Support of its Mot. to Dismiss [Dkt. # 9-1] ("Def.'s Mem."), at 3; Compl. at Ex. 3.

As to the first issue, the Project Manager "confirmed with DISA that two days per week telework is acceptable" in an email on July 22, 2013. Compl. at Ex. 4. As to the

---

[1] Although plaintiff's motion to remand is denied as moot, the Court is satisfied that it has subject-matter jurisdiction to decide defendant's motion to dismiss pursuant to the diversity statute, 28 U.S.C. § 1332. Based on the damages requested in plaintiff's prayer for relief and the likely amount of attorney's fees, which are recoverable under the Maryland statute that plaintiff has sued under, the jurisdictional amount in controversy of $75,000 is satisfied. *See* Def.'s Opp. to Pl.'s Mot. for Remand and Attorney's Fees, at 1-3 [Dkt. # 10]; Compl. at pp. 12-13.

salary increase, however, the Project Manager was far more circumspect: "the increase in salary is doable . . . . Now I have to check on how I go about initiating a salary increase that is, in essence, out of cycle and not attributed to assessment actions." *Id.* Later that day, the Project Manager reiterated to plaintiff that the salary issue was unresolved, explaining that he did not have authority at his level to agree to the salary increase: "the contract will support the raise, it is just the unknown of Booz Allen management that I have to address. At this point, I do not see any reason this will not work out. I would just like to get an OK from Level 4/5 to ensure we have the backing." Compl. at Ex. 5. Indeed, plaintiff confirmed her understanding that the salary issue was unresolved, writing "I will await to hear from you." *Id.*

Unlike the working remotely issue, the Project Manager *never* confirmed an agreement on the salary increase. Two days later, he wrote to plaintiff, "I have HR started on the process for your market salary increase. I do not have any idea how long it takes, but I would guess a few days at least. Hopefully such that it can take effect on 1 Aug. I'll keep you advised as I hear about where in the process it is." Compl. at Ex. 6. Plaintiff alleges that based on this ambiguous report, she declined the other job offer. Compl. ¶¶ 21-22. Ultimately, those with authority within Booz Allen attempted to negotiate a salary increase with plaintiff in September 2013, but those efforts were unsuccessful. Compl. ¶¶ 28-30. A month and a half later, on November 12, 2013, plaintiff resigned her employment with Booz Allen. Compl. ¶ 34, at Ex. 9.

## ANALYSIS

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level. . . .").

A court must "treat the complaint's factual allegations as true" and "grant plaintiff the benefit of all inferences that can be derived from the facts alleged[.]" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks omitted). However, the court need not "accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). "In ruling on a 12(b)(6) motion, a court may consider facts alleged in the complaint, documents attached to or incorporated in the complaint, matters of which courts may take judicial notice, and documents appended to a motion to dismiss whose authenticity is not disputed, if they are referred to in the complaint and integral to a claim." *Harris v. Amalgamated Transit Union Local 689*, 825 F.Supp.2d 82, 85 (D.D.C. 2011).

Under Maryland law, "to establish a contract the minds of the parties must be in agreement as to its terms." *Safeway Stores, Inc. v. Altman*, 463 A.2d 829, 831 (Md. 1983) (quoting *Klein v. Weiss*, 395 A.2d 126, 141 (Md. 1978)); *see also Mayor and City*

4

*Council v. Kelso Corp.*, 449 A.2d 406, 410 (Md. 1982); *McKeever v. Washington Heights Realty Corp.*, 37 A.2d 305, 308 (Md. 1944).[2] Thus, to allege a breach of contract, plaintiff must show that "the terms of the contract are in all respects definitely understood and agreed upon and that nothing is left for future settlement." *Peer v. First Fed. Sav. & Loan Assoc.*, 331 A.2d 299, 301 (Md. 1975). Additionally, "[i]t is well-established that Maryland law requires unqualified acceptance of the offer for the purported acceptance to be effective." *Montage Furniture Services v. Regency Furniture*, Inc., 966 F.Supp.2d 519, 524 (D. Md. Sept. 4, 2013).

Here, plaintiff has not alleged a contract entitling her to the wages she seeks because the Project Manager never "definitively" agreed to her requested terms. The Project Manager first told plaintiff that he had to "check on a few things to see" if Booz Allen would increase her salary and allow her to telecommute. Compl. at Ex. 4. He then stated that the salary increase was "doable" but he needed to "check on how" to initiate an out of cycle salary increase. *Id.* Next, the Project Manager informed plaintiff that he still did not have "confirmation" and that while "the contract will support the raise it is just the unknown of Booz Allen management that I have to address." Compl. at Ex. 5. In his last communication with Ms. Allen about the issue, the Project Manager still did not provide confirmation of a deal. He promises only to "keep [plaintiff] advised as [he] hears about where in the process it is." Compl. at Ex. 6.

---

[2] The parties do not dispute that Maryland law governs plaintiff's state law claims. *See* Compl. ¶ 67; Def.'s Mem. at 5.

The qualifications and lack of definitive agreement regarding the salary increase stand in stark contrast to the *clear* agreement to plaintiff's request to work remotely. *See* Compl. at Ex. 4 ("confirmed with DISA that two days per week telework is acceptable"); *id.* at Ex. 5 ("I already know we are good on the telework"). The Project Manager made *no* such definitive statements regarding the salary increase.

Moreover, the conditional responses regarding plaintiff's pay demonstrate, as a matter of law, that the parties did *not* reach a definite agreement on plaintiff's proposed salary term. At best, the amount of the proposed raise was "left for future settlement." *Peer*, 331 A.2d at 301. The Project Manager's description of the various procedures that had to take place before Booz Allen would agree to plaintiff's proposal not only showed that the parties had not reached an agreement regarding any raise, but further demonstrated that various other parties could reject plaintiff's raise request altogether. This ambivalence and lack of definition prevented the parties from creating an enforceable contract. *Montage*, 966 F. Supp. 2d at 524-25; *see also Straka v. Francis*, 867 F. Supp. 767, 776 (N. D. Ill. 1994) (with respect to alleged fixed-term employment contracts, "expressions of hopes and intentions, and assertions that must be inferred from circumstances and indirect evidence are insufficient to withstand a motion to dismiss.") (citation omitted).[3] Without an enforceable agreement, plaintiff's breach of contract claim fails as a matter of law and must be DISMISSED.

---

[3] Although Illinois contract law applies a "clear and definite" standard to contract formation, *Straka*, 867 F. Supp. at 776, Maryland applies a similar "certain and definite" standard. *See Peer*, 331 A.2d at 301.

Because plaintiff does not have an enforceable agreement as to the salary increase, she cannot establish her claims for unpaid wages under either the DCWPCA or MWPCA. In the District of Columbia, "[w]henever an [at-will] employee quits or resigns, the employer shall pay the employee's wages due . . . ." D.C. Code § 32-1303(2). The DCWPCA defines "wages" as "monetary compensation after lawful deductions, owed by an employer for labor or services rendered." *Id.* at 32-1301(3).[4] Similarly, the MWPCA requires an employer to "pay an employee . . . all wages due for work that the employee performed before the termination of employment . . ." Md. Code Ann. § 3-505(a). In Maryland, "wage" means "all compensation that is due to an employee for employment." *Id.* at § 3-501(c)(1). The parties did not agree to the increase in salary that plaintiff proposed. Because there was no agreement to increase plaintiff's salary, defendant did not "owe" plaintiff the difference between her proposed increase and her salary as of July 2013, nor was the difference "due," within the meaning of either state's wage law. Accordingly, the state law wage claims are DISMISSED.

As to plaintiff's negligent misrepresentation claim, that too fails because she has not alleged that defendant negligently asserted a false statement. Under Maryland law, an individual negligently asserts a false statement if she fails to exercise reasonable care in communicating information that was material to someone's decision to accept an employment offer. *See Griesi v. Atl. Gen. Hosp. Corp.*, 756 A.2d 548, 555 (Md. 2000).

---

[4] Plaintiff's DCWPCA claim fails for the additional reason that plaintiff's position, as an administrative employee receiving at least $250 per week whose primary duties consisted of non-manual work directly related to management policies or general business operations, is exempt. *See* D.C. Code § 32-1301(2); D.C. Mun. Regs. Tit. 7, § 999.1.

7

Negligence involves "doing something that a person using ordinary care would not do ... or not doing something that a person using ordinary care would do." *Weisman v. Connors*, 540 A.2d 783, 793(Md. 1988). "Ordinary care" means the "caution, attention or skill a reasonable person would use under similar circumstances." *Id.*

The facts alleged in the Complaint do not do rise to the level of demonstrating that Booz Allen failed to meet the standard of ordinary care in providing plaintiff with accurate information concerning her employment. The Project Manager took care in each step of his communications with plaintiff *not* to guarantee her a raise. He reiterated to plaintiff that he did not have authority to grant her raise. *See* Compl. at Ex. 5 ("the contract will support the raise it is just the unknown of Booz Allen management that I have to address . . . I would just like to get an OK from Level 4/5 to ensure we have the backing."). Furthermore, a statement cannot support a negligent misrepresentation claim where the subject of the statement is not "within the exclusive control of the individuals alleged to have made the statement." *See Abercrombie v. Nationwide Mut. Ins. Co.*, 999 F. Supp. 660, 664 (D. Md. 1998). The Project Manager made it explicitly clear that approval from other people was necessary before the salary increase could be given. *See* Compl. at Exs. 4-6.

Additionally, a plaintiff generally cannot establish a claim for negligent misrepresentation unless she can demonstrate that the false statement was a misrepresentation of a material "fact," instead of merely a promise of some future event. *See Hale Trucks of Md., LLC v. Volvo Trucks N. Am., Inc.*, 224 F. Supp. 2d 1010, 1031-1032 (D. Md. 2002); *Miller v. Fairchild Indus.*, 629 A.2d 1293, 1301-1304 (Md. 1993).

8

The statements here were about an approval process that was then taking place, but not yet completed, and, as it turns out, was never completed. Thus, there was no misrepresentation of a material "fact," only statements about possible future events. As a result, plaintiff's negligent misrepresentation claim must also be DISMISSED.[5]

## CONCLUSION

Thus, for all of the foregoing reasons, defendant's motion to dismiss is GRANTED, and this case is DISMISSED without prejudice for failure to state a claim. A separate Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[5] Plaintiff's claim of promissory estoppel is equally unavailing. To establish such a claim, a plaintiff must allege a "clear and definite promise," which is "one that reasonably defines the contours of the action or forbearance." *McKenzie v. Comcast Cable Commc'ns, Inc.*, 393 F. Supp. 2d 362, 372-73 (D. Md. 2005); *see also Pavel Enterprises, Inc. v. A.S. Johnson Co., Inc.*, 674 A.2d 521, 532 (Md. 1996). Here, the Project Manager's statements did not constitute a "clear and definite" promise that Booz Allen agreed to plaintiff's salary increase, as plaintiff was informed that a salary increase was subject to approval by other individuals. *See* Compl. at Exs. 4-6; *see also Dunnavile v. McCormick & Co., Inc.*, 21 F. Supp. 2d 527, 535 (D. Md. 1998) (finding reliance unreasonable where alleged promisor "lacked the actual or apparent authority to bind"). Accordingly, the promissory estoppel claim must similarly be DISMISSED.